UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAMERON WARREN,

                Plaintiff,

-against-

QUENDRY GUERRERO, et al.,

                Defendants.

21-CV-11236 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff, who is currently domiciled in California, is proceeding *pro* se. He sues nearly 50 former coworkers who worked with him at a Manhattan retail store that closed in 2019. Plaintiff believes that when these coworkers were laid off, they may have received payment from their former employer, Philips Van Heusen Corporation (PVH), to enter into a nondisclosure agreement that might have included terms relating to a photograph of Plaintiff taken off-site, outside of work hours. Plaintiff does not allege that any defendant photographed him or disseminated the photograph – just that they "profited" from his "labor" as a result of having been paid to enter into the nondisclosure agreement.[1]

      By order dated January 31, 2022, the Court directed Plaintiff to amend his complaint to address deficiencies in his original pleading. The Court held that Plaintiff failed to state a claim under the Defend Trade Secrets Act of 2016 (DTSA), 18 U.S.C. § 1836 *et seq*., or the Copyright

---

[1] In a separate suit, Plaintiff sues numerous individuals on peripherally related matters. *See Warren v. PVH Corp.*, ECF 22-CV-00851 (S.D.N.Y.). In that complaint, Plaintiff sues: (1) Alex Contreras, who allegedly photographed Plaintiff unlawfully; (2) PVH, in connection with allegations of sexual harassment during Plaintiff's employment; (3) police officers, who allegedly failed to handle Plaintiff's criminal complaint appropriately; (4) state court clerks, who allegedly violated Plaintiff's rights in connection with issuance of state court summonses; and (5) former coworkers (six of whom are also named in this action), either for harassment or for payments received at the time of their layoffs.

Act, 17 U.S.C. § 501 *et seq.*, and denied Plaintiff leave to replead such claims because it would be futile to do so.

Plaintiff filed an amended complaint on February 11, 2022, and the Court has reviewed it. Plaintiff invokes the Court's federal question and diversity jurisdiction, 28 U.S.C. §§ 1331, 1332, reasserting his trade secrets claims under the federal DTSA and state law. Plaintiff also includes a common law claim for unfair competition, and the complaint could be liberally construed as bringing claims for unjust enrichment.

For the reasons set forth below, the Court dismisses Plaintiff's amended complaint.

## STANDARD OF REVIEW

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing Pillay v. INS, 45 F.3d 14, 16-17 (2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court also may dismiss an action for failure to state a claim, "so long as the plaintiff is given notice and an opportunity to be heard." *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (citation and quotation marks omitted).

The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

In his amended complaint, Plaintiff Cameron Warren alleges the following facts. Plaintiff worked in New York at a retail store for the Tommy Hilfiger brand, owned by PVH. (Amended

Complaint, ECF 7 at 8, ¶ 54.) On November 22, 2018, when Plaintiff was at the home of non-defendant Alex Contreras, Contreras took a picture of Plaintiff "in bed, chests exposed." (*Id.* at ¶ 53.)[2] Plaintiff states that he works, or intends to work, as a model but in photos "generally concealed his mid-section . . . due [to the fact] that Plaintiff experienced compulsive weight gain that was visible when Plaintiff's chest was exposed." (*Id.* at 21, ¶ 98.). Plaintiff objects to "the unfavorable condition of his midsection in the unlawful photo— *i.e.*, unsculpted chest, hanging male breast, flabby stomach," which could negatively impact his "pursuit" of modeling opportunities. (*Id.* at 22, ¶ 99.). In his original complaint, Plaintiff described the photograph as being "of a sexual nature." (ECF 1 at 7, ¶ 10).

Contreras, who also worked at the Tommy Hilfiger retail store, "disseminated the photo at [their] place of work" on an unspecified date. (ECF 7 at ¶ 54.) One employee, Marcellus Boreland, confirmed that two others (Hosein and Aguilar) had "seen the aforementioned image." (*Id.* at ¶ 54.) Plaintiff makes no allegation that any defendant has a copy of the photograph or further disseminated it.

Plaintiff "receiv[ed] and formally report[ed] several incidents of workplace harassment on March 4, 2019." (*Id.* at ¶ 55.)[3] He does not plead any facts about the harassment but states that he attributes it to the "uncheck[ed] and unpunished dissemination of [the] unlawfully taken photograph." (*Id.*)

---

[2] Plaintiff states that Contreras, in taking Plaintiff's photo at Contreras's home, engaged in unlawful surveillance, in violation of New York Penal Law § 250.45 (ECF 7 at 9, ¶ 57), which prohibits photographing people without their permission in certain circumstances.

[3] Plaintiff does not sue his former employer here or allege that he filed a discrimination charge with any administrative agency. Plaintiff also does not plead facts showing that any named defendant was personally involved in harassment; he merely makes passing reference to this. The Court therefore does not understand Plaintiff to be asserting a workplace harassment claim in this action. Plaintiff has sued PVH in *Warren v. PVH Corp.*, ECF 22-CV-00851 (LTS), and the Court considers his claims against PVH in that action.

On March 24, 2019, without warning, PVH closed the retail location where Plaintiff worked, and all 77 employees were laid off. (*Id.*) The laid-off employees were called to PVH's branch headquarters on Madison Avenue in Manhattan for "severance meeting[s]" on or about March 25, 2019. (*Id.* at ¶ 56.) Plaintiff had worked nearly full-time for the New York store that closed for approximately five months, and he was paid $4800 under the Worker Adjustment and Retraining Notification (WARN) Act. (*Id.* at ¶ 62).[4]

When Plaintiff exited the conference room after his severance meeting, he saw co-worker "Krissy," whose severance papers were open and noted that her "WARN pay amount" was about $1000. (*Id.* at ¶ 61.) Plaintiff learned that co-worker Eli, who had begun working at the store at the same time as Krissy, was paid $4800, which Plaintiff "found irregular." (*Id.* at ¶ 67.) Plaintiff "probed" another ex-coworker, James, about Eli's higher-than-expected payout, but James never responded. (*Id.*) Plaintiff posits that Eli must have received money from a non-disclosure agreement in connection with the dissemination of Plaintiff's photograph (*id.*), though Plaintiff has not pleaded any facts that would explain why he drew that conclusion.

Plaintiff texted that evening with former coworker Karen Bowden, who allegedly "tried to console" him, but he does not plead any facts about what she said. (*Id.* at ¶ 68.) She then "stopped communicating with Plaintiff." (*Id.*) Plaintiff suggests that Bowden may have had "reserv[ations] regarding accepting a non-disclosure agreement to conceal criminal actions against Plaintiff." (*Id.*)

On March 26, 2019, Plaintiff used "different pretexts" to get former coworker Guerrero to meet so that Plaintiff could "try to get information." (*Id.* at ¶ 69.) Guerrero asked Plaintiff if he

---

[4] The WARN Act requires covered employers to either (1) give their employees written notice 60 days before a mass layoff or site closing, or (2) pay the employees if they fail to give the notice. 29 U.S.C. 2100 *et seq*.

4

had attended his severance meeting; Plaintiff suggests that this reflects that Guerrero was "probing into Plaintiff['s] knowledge of fact[s] that were assertively being covered up." (*Id.*)

Plaintiff left New York and did not return until "early 2021" (*id.* at ¶ 71), approximately two years after the store closing. Upon Plaintiff's return to New York, Plaintiff asked former coworker Karter if he had signed a non-disclosure agreement, and Karter "did not deny the allegation." (*Id.*) On August 6, 2021, Plaintiff asked Bowden if she had signed a non-disclosure agreement; she responded that he had "got it all wrong" and asked him to keep her "out of this." (*Id.* at ¶ 74.)

On the same day that Plaintiff called Defendant Bowden, August 6, 2021, he also called former store manager Darcheville, who "pretended not to know who Plaintiff was." (*Id.* at ¶ 76.) Plaintiff inquired about Darcheville's severance meeting two years earlier (after which, Plaintiff noted, she appeared anxious when exiting the conference room). (*Id.*) Plaintiff also suggested to Darcheville that she must have had to sign a non-disclosure agreement before being hired as a store manager, and she responded that the "only business that was discussed during her severance meeting was her own." (*Id.*)

Plaintiff went to the home of former coworker Rodriguez. Thereafter, in a text message, Plaintiff "made the accusation that Defendant Rodriguez had signed an 'NDA.'" (*Id.* at ¶ 78.) He attaches to the complaint a copy of a text message in which Rodriguez replied in pertinent part:

> If you're looking to get money and sue Tommy do it but leave me out of it don't ask me questions to try and incriminate ppl 3 years later . . . You came looking for me at my house [and] you informed me that you found out my information on the web. [Y]ou came and spoke to me on August 9, 2021. [Y]ou also called me on August 24, 2021. IDK what you're trying to do or who you are trying to incriminate. If anything you are technically harassing me about this.

(*Id.* at 42.)

On October 21, 2021, after Plaintiff returned to California, he notified certain of the defendants that he understood that they had entered into a nondisclosure agreement with PVH, and that Plaintiff was seeking information about "crimes against him" and PVH's "cover up." (*Id.* at 43.) He tells defendants in the letter that they will be "sued for unjust enrichment" unless they "take action" on "disclosure of facts" within 14 days. (*Id.*)

Plaintiff alleges that he is domiciled in California and that Defendants are domiciled in New York, New Jersey, and Pennsylvania. He seeks damages in excess of $75,000, as well as injunctive relief. On February 17, 2022, Plaintiff wrote to the Court requesting leave to amend his complaint a second time in order to (1) correct "errors within the Exhibits section"; and (2) alter the relief that he seeks. (ECF 12.) He also moves for appointment of *pro bono* counsel. (ECF 9.)

## DISCUSSION

### A.   Trade Secrets Claims

Plaintiff reasserts his federal and state claims that Defendants have misappropriated a trade secret. As set forth in the Court's January 31, 2022, "trade secret" is defined broadly in the DTSA as "all forms and types of financial, business, scientific, technical, economic, or engineering information." *Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 463 F. Supp. 3d 490, 499-500 (S.D.N.Y. 2020) (citing 18 U.S.C. § 1839).

Under New York law, "[a] trade secret is any pattern, formula, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Elsevier Inc. v. Dr. Evidence, LLC*, No. 17-CV-5540 (KBF), 2018 WL 557906, at *3 (S.D.N.Y. Jan. 23, 2018) (quoting *Softel Inc. v. Dragon Med. Scien. Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997) (internal quotation marks

and citations omitted)). It is "a process or device for continuous use in the operation of the business." *Id.*

Plaintiff argues that the iPhone live photograph qualifies as a trade secret because it displayed a pattern that was "not readily accessible in 'still media'" and displayed areas of his body that were "off limits." (ECF 7 at 21, ¶ 98.) Even if the photograph was taken without Plaintiff's permission and showed parts of his body that he wished to keep private, the photograph is not the type of information that qualifies as a trade secret. *See, e.g.*, *Elsevier Inc.*, 2018 WL 557906, at *5 ("[C]onfidential information" is not equivalent to "trade secrets."). The photograph is not "financial, business, scientific, technical, economic, or engineering information" within the meaning of the DTSA. It is also not "a process or device for continuous use in the operation of the business," nor does it provide anyone with an "advantage over competitors who do not know or use it." *Dragon Med. Scien. Commc'ns, Inc.*, 118 F.3d at 968. In short, the photograph is not a trade secret, and the allegations of Plaintiff's amended complaint thus fail to state a claim on which relief can be granted under federal or state trade secrets laws.

**B.    Other State Law Claims**

Plaintiff has pleaded facts sufficient at this stage to invoke the Court's diversity jurisdiction, under 28 U.S.C. § 1332. The Court therefore addresses Plaintiff's additional state law claims.

**1.    Unfair Competition**

Plaintiff asserts a claim under New York law for unfair competition. "[T]he essence of unfair competition under New York common law is 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" *Rosenfeld v. W.B. Saunders, A Division of Harcourt Brace Jovanovich, Inc.*, 728 F.

Supp. 236, 249-50 (S.D.N.Y. 1990) (quoting *Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.*, 678 F. Supp. 424, 429 (S.D.N.Y. 1987), *aff'd*, 923 F.2d 845 (2d Cir. 1990)). In New York, a common law unfair competition claim requires the plaintiff to show either actual confusion, in an action for damages, or a likelihood of confusion, in an action for equitable relief. *See W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 576 (2d Cir. 1993) (citation omitted). Additionally, there must be some showing of bad faith. *See Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980).

Here, Plaintiff's allegations in connection with his "unfair competition" claim are as follows:

> [Defendants] benefitted unjustly from the Plaintiff's labor as the image in question, taken without Plaintiff's content, was used by the defendants, egregiously, without Plaintiff's knowledge or consent in trade for a monetary benefit. Plaintiff argues that each Defendant knew, or had reason to know, that the 'NDAs' were being solicited illicitly, and rapaciously chose to accept such an offer.

(ECF 7 at 26, ¶ 119.)

Plaintiff alleges no facts indicating that Defendants are his business competitors or that Defendants engaged in any effort "to cause confusion or to deceive purchasers as to the origin of the goods." *Rosenfeld*, 728 F. Supp. at 249-50. Instead, he simply suggests that they have indirectly "used [the photo] . . . in trade for a monetary benefit" when they accepted a non-disclosure agreement. (ECF 7 at 26, ¶ 119.) These allegations fail to state a claim on which relief can be granted for unfair competition, and the Court therefore dismisses this claim.

### 2.     Unjust Enrichment

Plaintiff has not explicitly asserted a claim for unjust enrichment in the amended complaint but, in a letter to Defendants that he has annexed to his amended complaint, he

threatens to sue them for unjust enrichment if they fail to take certain actions. (ECF 7 at 43.) The Court therefore liberally construes the complaint as asserting an unjust enrichment claim.

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (relying on *Clark v. Daby*, 300 A.D.2d 732, 751 N.Y.S.2d 622, 623 (2002)). "[I]t is the plaintiff's burden to demonstrate that services were performed for the defendant resulting in [the latter's] unjust enrichment, and the mere fact that the plaintiff's activities bestowed a benefit on the defendant is insufficient to establish a cause of action for unjust enrichment." *Clark*, 300 A.D.2d at 732-33 (citations and quotations omitted).

Here, at most, Plaintiff alleges that defendants may have incidentally benefited from the fact that they were (or may have been) paid to refrain from disclosing matters relating to their former employer, including refraining from disseminating a photograph of Plaintiff taken by a non-defendant. Plaintiff does not satisfy his burden of showing that he performed any labor or services directly for defendants. If defendants were paid in connection with a nondisclosure agreement, the payment is for the defendants' own actions – agreeing to engage in or refrain from engaging in certain conduct –not for Plaintiff's photograph or his labor. Plaintiff thus fails to state a claim for unjust enrichment against any defendant.

## C.    Denial of Leave to Amend

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Plaintiff has requested another opportunity to amend his complaint, and indicates that his second amended complaint would correct "errors within the Exhibits section" and alter the relief that he seeks. (ECF 12.) These proposed amendments show no likelihood of curing the deficiencies in Plaintiff's amended complaint. The exhibits are comprised primarily of text messages between Plaintiff and defendants as he attempted to obtain information from them, and there is no reason to think that any "errors" in the exhibits are material. The allegations of the amended complaint do not show that Plaintiff is entitled to any relief from defendants, and it would therefore be futile to allow him to amend to seek relief that is different in amount or kind. The Court therefore denies Plaintiff's request to make these proposed changes or to further amend his complaint.

Plaintiff is warned that all litigants are required to make a reasonable investigation that their claims are well-founded before filing suit. Fed. R. Civ. P. 11. Moreover, vexatious litigation in this Court, or litigation that is for the purpose of harassment, can result in an order barring Plaintiff from filing new actions unless he receives prior permission. *See* 28 U.S.C. § 1651.

## CONCLUSION

Plaintiff's amended complaint is dismissed for failure to state a claim on which relief can be granted. Plaintiff's request for the Court to seek *pro bono* counsel (ECF 9), and any other pending requests, are denied as moot. This order closes the case under this docket number.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

      The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

SO ORDERED.

Dated:   February 22, 2022
           New York, New York

                                        /s/ Laura Taylor Swain
                                      LAURA TAYLOR SWAIN
                              Chief United States District Judge